JUDGE CASTEL

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiff
VERDA SHIPPING INC.
355 Lexington Avenue
New York, New York 10017
212-983-8500



08 CV 2751

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VERDA SHIPPING INC.,

           Plaintiff,

   -against-

EMCO SHIPPING,

           Defendant.
------------------------------------------------------------X

08 Civ.

**VERIFIED COMPLAINT**

MAR 14 2008

Plaintiff, VERDA SHIPPING INC. ("Plaintiff"), by its attorneys, Brown Gavalas & Fromm LLP, as and for its Verified Complaint against defendant EMCO SHIPPING ("Defendant"), alleges upon information and belief as follows:

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has jurisdiction under 28 U.S.C. § 1333.

2. At all material times, Plaintiff was and now is a foreign corporation with an office and place of business at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands.

3. Upon information and belief, at all material times Defendant was and still is a corporation organized and existing under the laws of Turkey, with an office and place of business at Gulbahar Sok. No. 17, Perdemsac Plaza, K. 14, No:148, Kozyatagi, Istanbul, Turkey.

4. At all material times, Plaintiff was the owner of the motor vessel COMMANDER

("the Vessel").

5. On or about May 16, 2007, Plaintiff, as owner, and Defendant, as charterer, entered into a charter agreement whereby Plaintiff agreed to let and Defendant agreed to hire the Vessel to transport a cargo of steel, under certain terms and conditions, from Diliskelesi, Turkey to Aden, Yemen ("the Charterparty").

6. On or about May 25, 2007, the Vessel berthed at the port of Diliskelesi, Turkey to load Defendant's cargo, consisting of 6,574.87 metric tons of steel bars ("the Cargo").

7. At Diliskelesi, Plaintiff's Protection and Indemnity Club commissioned a pre-loading survey of the Cargo, which indicated that, prior to loading, seventy bundles of bars had partial surface rust stains, ten bundles had partly oily surface, and thirty bundles had between two and six bars bent at the ends by a forklift. A daily discrepancy report was provided to the Master of the Vessel in writing.

8. Pursuant to the above survey, on May 26, 2007, the Master entered notations on the Mate's receipt, reflecting the pre-loading condition of the cargo as aforesaid.

9. On May 26, the Master issued a letter to Defendant's agents authorizing them to sign the Bill of Lading on behalf of the Master for the Cargo actually loaded on the Vessel, subject to the following language:

> 1. The B/L signed strictly conforms with the quantities, quality and description shown on the Mate's receipt as well as with the ship's remarks inserted. B/L signed without complying to the above condition will be considered null and void and signed without my authority.

10. On June 11, 2007, Plaintiff again informed Defendant that Defendant "should issue B/L strictly in accordance with Mate's receipt/value report and the relevant remarks."

11. Despite Plaintiff's instructions and the Master's note that failure to include the remarks would result in the Bill of Lading being "considered null and void and signed without

my authority," Defendant failed to note the damaged condition of the Cargo on the Bill of Lading. Upon information and belief, the Defendant and/or its agents signed and issued a "clean" Bill of Lading containing no reference to the Master's remarks on the Mate's receipt.

12. The Vessel arrived at the discharge port of Aden, and discharged the Cargo between June 19 and 25, 2007.

13. As a result of Defendant's failure to incorporate the Master's remarks from the Mate's receipt into the Bill of Lading, the cargo receiver presented a clean Bill of Lading for the Cargo at the discharge port. Upon receiving the damaged Cargo, the cargo receiver brought a claim against Plaintiff for damages.

14. To secure their claim, the cargo receivers caused the Vessel to be arrested from June 25, 2007 at 4:00 p.m. until July 3, 2007 at 12:00 a.m., at which time Plainitiffs were able to negotiate a bank guarantee for the release of the Vessel.

15. As a result of the Vessel's arrest, Plaintiff suffered lost income and incurred management fees and costs in the amount of $128,062.45.

16. At the conclusion of the charter, Defendant owed Plaintiff unpaid hire in the amount $59,230.45. Only $23,279.00 of this outstanding hire has been paid by Defendant, despite due demand for payment in full. Therefore, the balance due to Plaintiff for outstanding hire is $35,951.80.

17. Under the terms of the Charterparty, all disputes between the parties are to be decided by arbitration in London, pursuant to English law. The parties have commenced arbitration proceedings in London.

18. This action is in aid of said London arbitration proceedings in accordance with 9 U.S.C. § 8. Plaintiff seeks to obtain adequate security to satisfy a potential London arbitration

award in Plaintiff's favor.

19. In addition to recovering the principal amount due Plaintiff pursuant to the Charterparty, Plaintiff also fully anticipates recovering interest, costs and attorneys' fees, which are routinely awarded to the prevailing party in London arbitration proceedings. As best as can now be estimated, Plaintiff expects to recover the following amounts in the London arbitration:

| | | |
|---|---|---|
| a. | On the principal claim | $164,014.25 |
| b. | 3 years of interest at 6% per annum, compounded quarterly | $32,084.17 |
| c. | Costs (arbitrators' fees, attorneys' fees etc.) | $164,000.00 |
| | TOTAL | $360,098.42 |

20. Upon information and belief, Defendant cannot be found within the District, within the meaning of Supplemental Rule B of the Federal Rules Civil Procedure, but is believed to have or will have during the pendency of this action assets within this District, specifically including cash, funds, freight, hire, accounts and other property, in the hands of garnishees in the District including, but not limited to, American Express Bank, Ltd.; ABN-AMRO Bank; Bank of Tokyo Mitsubishi UFJ Ltd.; Barclays Bank; Calyon; Standard Chartered PLC; HSBC Bank; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Deutsche Bank; Citibank; Mashreq Bank; Bank of China; UBS AG; and Wachovia Bank, which are believed to be due and owing to the Defendant.

Plaintiff prays:

A. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That because the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of the Court to issue Process of Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules and the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all cash, goods, chattels, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee, including American Express Bank, Ltd.; ABN-AMRO Bank; Bank of Tokyo Mitsubishi UFJ Ltd.; Barclays Bank; Calyon; Standard Chartered PLC; HSBC Bank; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Deutsche Bank; Citibank; Mashreq Bank; Bank of China; UBS AG; and Wachovia Bank, which are due and owing to the Defendant, in the amount of $360,098.42, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B, answer the matters alleged;

C. That this action be stayed and this Court retain jurisdiction over this matter through the entry of any judgment or award, and any appeals thereof; and

D. That Plaintiff have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
       March 14, 2008

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiff
VERDA SHIPPING INC.

By: _____
Peter Skoufalos (PS- 0105)
355 Lexington Avenue
New York, New York 10017
212-983-8500

## VERIFICATION

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

PETER SKOUFALOS, being duly sworn, deposes and says:

1. I am a member of the bar of this Honorable Court and of the firm of Brown Gavalas & Fromm LLP, attorneys for Plaintiff.

2. I have read the foregoing Verified Complaint and I believe the contents thereof are true.

3. The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

PETER SKOUFALOS

Sworn to before me this
14th day of March 2008

Notary Public

EVAN B. RUDNICKI
Notary Public of the State of New York
No. 02RU6142314
Qualified in Rockland County
Term Expires March 13, 2012

6